## In re Anonymous No. 23 D.B. 79

Disciplinary Board Docket no. 23 D.B. 79

Report, Adjudication and Order
of The Disciplinary Board of
the Supreme Court of Pennsylvania

SCHIAVO, *Board Member,* August 12, 1980—
Pursuant to Pa.R.D.E. 208(d) (enforcement rules),
the Disciplinary Board of the Supreme Court of
Pennsylvania (board) herewith submits its find-
ings, adjudication and order with respect to the
above proceeding.

## I. STATEMENT OF THE CHARGES

This proceeding involves two charges which allege
violations of several Disciplinary Rules of the Code
of Professional Responsibility. Charge 1 involves
respondent's receiving the sum of $4,000 and sub-
sequently the sum of $14,170.36 from the same
client, his failure to deposit the same in one or more
identifiable escrow bank accounts for his client and
his outright converting over to his own use the first
said sum, depositing the latter sum in his own at-
torney's account and then drawing down on it for
his own uses and his misrepresenting to his said
client that he had said sums properly deposited for
her, allegedly in violation of D.R. 1-102(A)(3),
1-102(A)(4), 1-102(A)(6), 9-102(A)(1), 9-102(B)(3),
and 9-102(B)(4). Charge 2 involves respondent's
receiving the sum of $22,875 from other clients as
accident settlement proceeds, his failure to deposit
the same in an identifiable escrow bank account,
his depositing the same in his own attorney's ac-
count and then his drawing down on the same for
his own uses, allegedly in violation of D.R.
1-102(A)(3), 1-102(A)(4), 1-102(A)(6), 9-102(A),

9-102(B)(1), 9-102(B)(3), and 9-102(B)(4). Subsequently all of said moneys were paid by respondent to said respective clients.

## II.  HISTORY OF THE PROCEEDINGS

Subsequent to the initial filing of these proceedings by petitioner against respondent, the same was referred to a hearing committee. One hearing committee member shortly thereafter withdrew from participation hereunder, thereby rendering this as a hearing committee duly composed of the remaining two said members. On January 10, 1980 the report of the hearing committee was filed. The hearing committee found only violations of D.R. 1-102(A)(6), 9-102(A), 9-102(B)(1), 9-102(B)(3), and 9-102(B)(4), and recommended public censure with probation as the discipline for respondent. To this petitioner filed exceptions.

Upon review of the hearing committee report and particularly those sections thereof which implied or alluded to the possibility that respondent may have lost and may still be without his capacity to function as an attorney, the proceedings were remanded by the board to the hearing committee to receive additional evidence to determine if respondent is currently capable of practicing law and to determine a proposed plan of probation with the concurrence of the Office of Disciplinary Counsel and respondent and to submit the same to this board.

On June 16, 1980 the hearing committee filed another report with a proposed probation plan for respondent which was concurred in by petitioner and which by allowing respondent to practice law though under restricted circumstances demon-

strates an implied finding by the hearing committee and all parties that respondent does have sufficient capacity to presently practice law.*

## III. HEARING COMMITTEE RECOMMENDATION AND REASONS THEREFOR

The recommendations of the hearing committee [   ] are that respondent receive public censure with probation pursuant to its filed proposed probation plan because of respondent's violations of said Disciplinary Rules as so found by the hearing committee and because of certain medical and other evidence of respondent's condition which were introduced before it.

## IV. FINDINGS OF FACT

1.  Respondent, [   ] Esq., is an attorney admitted to practice law in the Commonwealth of Pennsylvania, and his last office was located at [   ].

2.  In or around February 1978, respondent's wife died suddenly, leaving him with two children.

3.  The sudden death of respondent's wife resulted in extreme mental trauma and shock to respondent.

4.  Respondent entered a period of severe depression and began heavy use of alcohol at or about the time of his wife's death.

5.  On or about March 16, 1979, respondent attempted suicide, and was in a state of severe psychotic depression.

---

*"The Petitioner did not agree that the respondent had sufficient capacity to presently practice law. The Petitioner filed an appeal to the Supreme Court from the Order of the Disciplinary Board dated August 12, 1980 imposing upon respondent a private reprimand with probation. As a result of the appeal filed, the Supreme Court entered its Order dated July 2, 1981."

6. The suicide attempt closely paralleled the first anniversary of his wife's death.

7. During the period following his wife's death, and at all times material herein, respondent suffered an impairment of judgment and a diminished mental capacity.

8. During the period of impaired judgment and diminished mental capacity, respondent committed the wrongful acts hereinafter set forth.

9. The parties stipulated that the following are the operative facts of Charge 1, and we so find:

a. For several years respondent had an ongoing attorney-client relationship with Client A during which time respondent represented her with respect to several legal matters including the sale of her home in [   ], New Jersey, in or about August of 1978. Prior to settlement, Client A borrowed funds totaling approximately $1,000 from respondent.

b. In or about August of 1978, Client A moved from New Jersey to Virginia and at about that time directed respondent to send her $5,000 from the proceeds of the sale of the New Jersey house. As of September 1978, Client A had not received the $5,000. However, by that time she had decided to move back to New Jersey and directed respondent to place $4,000 of the $5,000 into an interest bearing account on her behalf, retaining the sum of $1,000, which she owed him personally.

c. In or about September of 1978, respondent advised Client A that he had placed the aforementioned funds in an account in the [   ] Savings Fund Society. Respondent did not specify the account number for the aforementioned account, or any other information regarding the deposit of said funds.

d. Respondent did not open an account at the [   ] Savings Fund Society either in Client A's name individually or jointly with him.

e.  Respondent negotiated a check payable to him in the amount of $5,000 representing part of the proceeds of sale of Client A's home in New Jersey.

f.  Respondent used Client A's funds in the amount of $4,000 for his own uses and purposes and not for any use or purpose of Client A.

g.  On August 14, 1979, respondent reimbursed Client A in full in the amount of $4,000.

h.  In or about September of 1978, respondent agreed to represent Client A with respect to the purchase of real property also located in New Jersey. It was agreed that Client A would forward to respondent the funds needed for settlement and that he would personally appear at settlement on her behalf.

i.  Prior to the sale of Client A's property in Virginia, she instructed an attorney in Virginia, to send the entire proceeds of the sale of the Virginia property to respondent with the understanding that respondent would place whatever funds were not needed to settle the purchase of the New Jersey property in the account which she believed he had opened for her at the [   ] Savings Fund Society. On or about February 21, 1979, the attorney sent respondent a certified check dated February 21, 1979 in the amount of $14,170.36 payable in the name of the partnership by which respondent did business. The amount needed for settlement was approximately $11,912.58.

j.  On February 23, 1979, respondent deposited or caused to be deposited Client A's certified check dated February 21, 1979 in the amount of $14,170.36 into his attorney checking account.

k.  The aforementioned account was not an escrow account and was used by respondent as a general office account from which he paid his business and personal expenses.

1. Subsequent to the deposit of the aforementioned $14,170.36 respondent immediately drew upon the checking account at [   ] Bank for purposes unrelated to Client A's interests, and as of February 28, 1979, the balance of that account had been reduced to the sum of $11,701.95, which was inadequate to cover respondent's obligation to Client A.

m. At settlement on February 28, 1979, respondent advised the sellers of the New Jersey property that he could not give them a check at that time because Client A's check had not cleared.

n. The aforementioned representation made by respondent to the sellers was false.

o. The parties proceeded with the settlement on February 28, 1979, and respondent advised the sellers that Client A's check would clear by March 2, 1979, and distribution would be made to them at that time.

p. As of March 7, 1979, respondent had not issued a check and on that date, in response to an inquiry by seller, respondent agreed to deliver a check on March 8, 1979, to the office of the title company.

q. On March 8, 1979, respondent appeared at the aforementioned office without a check and advised the sellers that he did not have the money; however, at their request, he wrote a check payable to the title company in the amount of $11,912.58 dated March 8, 1979, which was drawn on his attorney checking account.

r. The aforementioned check was deposited by the title company and thereafter returned to them for lack of an endorsement. Said check was later redeposited by the title company and returned to them on or about March 19, 1979 for insufficient funds.

s. By registered letter dated March 14, 1979, the sellers advised respondent that his check had been dishonored and asked him to provide the settlement funds. Respondent did not reply to said letter, nor did he provide said funds.

t. Respondent used the aforementioned $14,170.36 for his own uses and purposes and not to any uses and purposes of Client A.

u. On August 14, 1979, respondent reimbursed Client A in full in the amount of $14,170.36.

10. The parties stipulated that the following are the operative facts of Charge 2 and we so find:

a. On or about December 12, 1977, clients B & C, husband and wife, retained respondent to represent them with respect to a personal injury claim arising out of an automobile accident which occurred on or about December 5, 1977. The other driver involved in the accident was operating a vehicle owned or leased at the time of the accident.

b. On December 12, 1977, clients B & C executed a contingent fee agreement whereby respondent would receive 40 percent of any funds recovered in connection with their claim.

c. In or about January of 1979, clients B & C accepted a settlement offer in the amount of $22,875 in connection with their claim and authorized respondent to endorse their signatures to any drafts issued pursuant to that settlement.

d. Thereafter the insurance carrier for defendant forwarded to respondent a draft dated February 3, 1979 payable to clients B & C, individually and as husband and wife, and their attorneys in the name of the partnership of which respondent was a member in the amount of $22,975.

e. On or about February 6, 1979, respondent deposited or caused to be deposited the $22,875 draft into an attorney checking account at [   ] Bank in the name of [Respondent].

f. The aforementioned account at [   ] Bank was not an escrow account and was used by respondent as a general office account from which he paid his business and personal expenses.

g. Subsequent to the deposit of the $22,875, respondent immediately drew upon the checking account at [   ] Bank, for purposes unrelated to the interests of clients B & C, and as of February 15, 1979, the balance of the checking account had been reduced to the sum of $1,300.82, which was inadequate to cover respondent's obligation to clients B & C.

h. Respondent diverted the aforementioned $22,875 to his own uses and purposes and not to any uses or purposes of clients B & C.

i. On August 16, 1979, respondent reimbursed clients B & C in the amount due them.

11. Respondent does have sufficient capacity to practice law under and pursuant to the conditions hereinafter outlined together with the plan of probation hereinafter prescribed.

## V.  CONCLUSIONS OF LAW

1. Respondent did not violate Rule 1-102(A)(3) and (4) which prohibits illegal conduct involving moral turpitude and dishonesty, fraud, deceit or misrepresentation.

2. Respondent did violate Rule 1-102(A)(6) which prohibits an attorney from engaging in any other conduct that adversly reflects on his fitness to practice law.

3. Respondent did violate Rule 9-102(A) and Rule 9-102(B)(1),(3) and (4) which requires segregation of clients' funds, the maintenance of appropriate records, and payment to a client promptly of funds in the possession of the lawyer which the client is entitled to receive.

## VI. PRIOR RECORD

There is no indication that respondent has any prior record of discipline.

## VII. DISCUSSION

The activities of respondent represent definite violations of the various Disciplinary Rules as aforesaid which definitely merit certain discipline. Briefly summarized, the activity of respondent included utilization of his clients' funds for his own personal uses and unrelated to his own clients' interests. This is all stated out with great specificity in the above findings of fact. Respondent has fully reimbursed the clients for their losses; however, such reimbursements came and resulted shortly after a petition for discipline was filed against respondent and, certainly, after respondent understood that his said activities were known to the Disciplinary Counsel. Therefore, while the same may be considered, such reimbursements by respondent cannot be considered as acts which absolve respondent of any and all blame or culpability hereunder.

Of themselves such acts are such as warrant a private reprimand considering the above findings of fact that they were committed during a period of time when respondent suffered from impaired judgment and diminished mental capacity. These extenuating circumstances present respondent within a framework of gross neglect or carelessness or an indifference to the respect to be accorded the law warranting a private reprimand as the appropriate discipline: In re Anonymous, No. 12 D.B. 78, 9 D. & C. 3d 276 (1978), and In re Anonymous, No. 19 D.B. 79, 14 D. & C. 3d 779 (1980). Where there are no such extenuating circumstances as the se-

vere personal infirmities of respondent during the period of time when the violations were committed, a harsher discipline may be warranted: In re Anonymous, No. 28 D.B. 75, 9 D. & C. 3d 57 (1978); In re Anonymous, No. 13 D.B. 78, 9 D. & C. 3d 106 (1978); and In re Anonymous, No. 19 D.B. 76, 8 D. & C. 3d 400 (1976).

Of equal concern to the board is the type of exposure the public will have relative to the practice of law by respondent in his present condition. The Disciplinary Board has fully reviewed the entire record of this case, including any and all medical evidence and reports and the said probation plan submitted to it on June 16, 1980 pursuant to said order of the Disciplinary Board. The Disciplinary Board in large part agrees with said proposed probation plan and has established and hereby presents its probation plan for respondent as follows:

1. Respondent shall be employed by a government agency or other office, or, in the alternative, be employed by or associated with one or more practicing attorneys where he will be required to deposit all clients' moneys into a designated escrow account for which another attorney will be co-signer along with respondent. In the event respondent is unable to obtain employment with a government agency or other office, or be employed by or associated with other attorneys, the monitor, as set forth hereinafter, shall be co-signer along with respondent.

2. Respondent shall designate one or more practicing attorneys who have consented in writing to serve as a monitor within fifteen (15) days of the date of this board's order imposing probation and other appropriate discipline. Said monitor or monitors shall be approved by this board and by Disciplinary Counsel for District I. The Discipli-

nary Board may, for any reason or at any time, replace said monitors or appoint a new monitor if said proposed monitor or monitors are unacceptable or at any time during this probationary period shall become incapable of performing their duties.

3. Respondent shall file a report with the Secretary of the Disciplinary Board within 30 days from the date of the order imposing probation and every three months thereafter on or about the 15th day of each month until further order of this board, which shall be reviewed and verified prior to filing by the monitor. Said report shall include the following:

(a) All pending matters in which respondent is acting as counsel including names and addresses of all clients;

(b) all new matters accepted by respondent, including names and addresses of all clients;

(c) a brief description of the actions respondent has been directed to and/or proposes to take with respect to the pending cases assigned to him when said actions are to be taken;

(d) the disposition of said cases; and

(e) the disposition of any and all funds received.

4. Respondent shall continue treatment with either [ ] M.D. or another psychiatrist of his own choosing on a regular basis at intervals to be determined by the psychiatrist.

5. Respondent's quarterly reports to the Secretary of the Disciplinary Board shall also include the dates of all visits to Dr. [ ] or any other psychiatrist and the length of each session.

6. [ ] M.D. or any other psychiatrist, subsequently selected by respondent for the purpose of treatment, shall be requested in writing by respondent to submit to the Secretary of the Disciplinary Board within 30 days from the date of the order of

probation and every three months thereafter until further order of the board, a report including the following:

(a) The dates respondent was seen and the length of each session;

(b) Whether any increase in respondent's depression occurred and if so, the dates of these episodes and whether respondent's therapy sessions and medication were increased accordingly;

(c) The treating physician's impressions of [respondent's] condition currently and whether or not he recommends continued therapy.

7. The period of probation shall be two years from the date hereof.

The Disciplinary Board feels assured that said probation plan will allow respondent a limited practice of law of which he is capable and will give the public every reasonable safeguard from any possible problems that could arise therefrom during the probationary period. At the same time respondent will be provided with the appropriate opportunity to improve his condition.

It must be clearly understood by respondent that this plan of probation is an extremely serious one that must be followed in all respects. Respondent must also clearly understand that any violation of this plan of probation will be treated as an independent ground for discipline. In other words, the total discipline here imposed by the Disciplinary Board upon respondent is a private reprimand by the board with probation per said plan of probation as aforesaid, that is, the type of discipline specified by Rule 204(5) of the Pennsylvania Rules of Disciplinary Enforcement, and the violation said plan of probation is in effect a violation of Rule 204(5), a violation of the Pennsylvania Rule of Disciplinary Enforcement; therefore, a violation by respondent

of said plan of probation shall be considered as a willful violation of a provision of the Enforcement Rules under Rule 203(b)(3), a grounds for discipline, which will thereupon subject respondent to a new charge or grounds for discipline which shall be the basis for an independent and new disciplinary proceeding. Until this time there has been some question as to how violations of such plans of probation should be treated. In accordance with the foregoing it is the opinion of the Disciplinary Board that a violation of any such plan of probation shall constitute a new and independent grounds for discipline under Rule 203(b)(3) of the Pennsylvania Rules of Disciplinary Enforcement. Such is plainly allowed by said rules; and this manner of enforcement of probation plans may prove to be the most effective way of assuring compliance with probation in our disciplinary system.

## VIII. ADJUDICATION AND ORDER

The Disciplinary Board hereby orders and imposes upon respondent a private reprimand with probation pursuant to the aforesaid plan of probaton and in accordance with Rule 204(5) of the Pennsylvania Rules of Disciplinary Enforcement.

Messrs. Anderson, Daniels, Krawitz and Elliott did not participate in the adjudication.

## ORDER

HENRY, *Chairman,* And now, August 12, 1980, the report and recommendation of hearing committee [  ] dated June 16, 1980 is accepted in part and it is ordered and decreed, that said [respondent] of [  ] be subjected to private reprimand by the Disciplinary Board of the Supreme Court of Pennsylvania as provided in Pa.R.D.E. 204(5) at the next session of this board.

It is further ordered and decreed, the said [respondent] is hereby placed on probation for a period of two years. The conditions of probation are outlined in the attached report.

## ORDER [OF PENNSYLVANIA SUPREME COURT]

PER CURIAM, July 2, 1981—There having been entered by this court an order dated March 16, 1981, suspending [respondent] immediately and a rule issued upon him to show cause why he should not be disbarred from the practice of law, upon consideration of the briefs filed and oral argument presented, ordered that the rule be and is hereby discharged; and it is further that the said [respondent] be and is hereby suspended from the Bar of the Commonwealth of Pennsylvania for the period of two years commencing March 16, 1981.